# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BOBBY G. DAVIS,**

                    **Plaintiff,**

**-vs-**                                    **Case No.  6:07-cv-941-Orl-31DAB**

**JAMES D. OLDHAM, III, and OLDHAM
GROUP, INC.,**

                    **Defendants.**
_____

# ORDER

This cause came on for consideration with oral argument on the following motions filed herein:

| MOTION: | [DEFENDANTS'] FIRST MOTION TO SET ASIDE DEFAULTS (Doc. No. 21) |
|---|---|
| FILED: | September 21, 2007 |

THEREON it is **ORDERED** that the motion is **DENIED on the merits**.

| MOTION: | DEFENDANTS' MOTION TO VACATE DEFAULTS (Doc. No. 22) |
|---|---|
| FILED: | September 24, 2007 |

THEREON it is **ORDERED** that the motion is **DENIED** as a mailed-in duplicate of Doc. No. 21, which was filed electronically; the document should not have been filed the second time.

The parties have sued each other in two different federal courts for claims arising from breach of a stock purchase agreement between Bobby Davis and Oldham Group, Inc. for purchase the stock of E'Prime Aerospace Corporation, under which agreement James D. Oldham made certain

guaranties.  Plaintiff Bobby Davis filed suit against  Defendants James D. Oldham and the Oldham Group, Inc. on June 4, 2007.  Doc. No. 1.  Following Davis sending a summons and request for waiver of service to Defendant James D. Oldham, Mr. Oldham failed to return the waiver of service in this Florida federal case and instead quickly filed his own lawsuit arising from the same stock purchase agreement in Tennessee federal court.

Because the waiver of service was not returned, Plaintiff Davis then served Oldham Group, Inc. through a registered agent and, subsequently, Mr. Oldham through personal service.  However, neither Oldham Group, Inc. nor Mr. Oldham timely answered and, on Davis's motions, default was entered by the Clerk against both Defendants.  Doc. Nos. 9, 14.  Davis then moved to enter final default judgments against both Defendants on September 20, 2007.  Doc. No. 20.  On September 21, 2007, James Oldham and the Oldham Group moved to vacate the entries of default (Doc. No. 21) and Davis responded (Doc. No. 26).

Following an evidentiary hearing on October 15, 2007, the Court finds that Defendants' Motion to set aside the defaults (Doc. No. 21) should be **DENIED**.  However, Defendants should be given the full opportunity to respond to Plaintiff's Motion for Default Judgment (Doc. No. 20) before the District Court makes a determination about final default judgment.

*Background Facts*[1]

For many years, Bobby Davis was the President, a director, and majority shareholder of E'Prime Aerospace Corporation headquartered in Titusville, Florida.  Davis had worked in the aerospace industry for several decades, including a long career with Boeing.  E'Prime was formed to work as a launch service company for civilian commercial space flights. During Spring 2006, Davis

---

[1]The facts are based on testimony at an evidentiary hearing on October 15, 2007, entries in the Court's docket, and the undisputed facts in the parties' pleadings.

was approached by a group of investors led by Noreen Wilson (the "Wilson Group"), who were interested in acquiring most of Davis's interest in E'Prime. Davis was allegedly concerned that the Wilson Group had ties to William Jefferson, the Louisiana Congressman recently indicted on Federal charges or racketeering and money laundering. Davis terminated negotiations with the Wilson Group.

Davis was approached by Oldham, with whom he had a long standing business relationship related to space industry ventures. Oldham was involved with E'Prime for ten years prior to 2006. Davis and Oldham eventually negotiated Oldham's acquisition of ninety percent (90%) of the shares of E'Prime that were held by Davis; the negotiations culminated in the execution and delivery of a stock purchase agreement and a personal guarantee. *See* Doc. No. 1, attachments.

Davis alleges that, several month after the agreements were executed, he learned that Oldham and his shell corporation, Oldham Group, were serving as a front for the Wilson Group. Plaintiff Davis filed his lawsuit in this Court, on June 4, 2007, against Defendants for claims arising out of breach of the stock purchase agreement for Oldham Group, Inc. to purchase 386,800,000 shares of stock in E'Prime Aerospace Corporation from Plaintiff; the purchase was personally guaranteed by Defendant James Oldham individually (collectively "the Agreements"). Doc. No. 1. Plaintiff Davis alleges he is owed a sum certain in excess of $4.385 million, exclusive of interest. Doc. No. 1, 20.

Davis also alleges that Oldham and the Wilson Group have engaged in a series of *ultra vires* acts and ignored the impact of breach of the Agreements, which Davis alleges returned majority ownership in control that he held prior to the transactions. Oldham admitted at the hearing that he issued new stock, installed a new Board of Directors, and moved the headquarters out of Florida. Doc. No. 26 at 3.

Davis sent[2] a Notice of Lawsuit and Request for Waiver of Service of Summons to Oldham Group, Inc. on June 7, 2007.  *See* Doc. No. 30-7.  Oldham did not return the waiver of summons acknowledging receipt of the summons.  Instead, Oldham contacted his own attorneys[3], who on July 20, 2007, instead of filing a responsive pleading in the Florida suit, instead filed claims against Davis (and his spouse) in Tennessee federal court for claims arising from alleged breach of the very same stock purchase agreement.  *See* Doc. Nos. 18-2; 21 at 4-8.  Based on representations of Davis's counsel at the evidentiary hearing, the court in Tennessee has ordered Oldham to show cause why the case should not be dismissed for lack of jurisdiction in Tennessee over Florida residents Davis and his spouse.

In the meantime, Plaintiff Davis served Defendant Oldham Group, Inc. with the Complaint in this case on July 23, 2007 through resident agent Irene Kennedy of Corporate Creations Network, Inc., as registered agent for Oldham Group, Inc.  Doc. Nos. 7; 30-8.  According to Oldham, process was not forwarded to any current officer, director, or shareholder of Oldham Group, Inc.  Doc. Nos. 21; 24.  Instead, it was forwarded to Noreen Wilson, who Oldham testified is not an officer of Oldham Group, Inc. but had helped the corporation incorporate and had been a consultant for E'Prime.

Plaintiff subsequently obtained a default against Oldham Group, Inc. on August 20, 2007.  Doc. No. 9.  Not until sixteen days after entry of the Clerk's default against it and nearly one month after its answer was due, did Oldham Group, Inc. file a responsive pleading, an untimely Motion to

---

[2]Oldham's counsel argued to no avail that the address where the waiver was sent, 992 Stage Avenue (Memphis, Tennessee), was incorrect and it should have been sent to 922 Stage Avenue.  Oldham conceded at the hearing that he received the waiver and personal service despite the incorrect address.

[3]Oldham's counsel, Wayne Hartke, testified at the hearing that he was not hired until September 1, 2007; however, his name appears as counsel appearing *pro hac vice* in a pleading filed on Oldham's behalf in Tennessee federal court.  Doc. No. 22-2.

Dismiss, on September 5, 2007.  Doc. No. 15.  Judge Presnell subsequently denied the Motion to Dismiss on September 19, 2007.  Doc. No. 19.

Davis sent a Notice of Lawsuit and Request for Waiver of Service of Summons to James G. Oldham, III[4] on June 7, 2007.  See Doc. No. 30-19.  However, Mr. Oldham did not return the waiver of service.  Plaintiff Davis personally served Defendant James D. Oldham, III, on August 14, 2007 with the Complaint in this case.  Doc. Nos. 10; 30-20.  However, Mr. Oldham "mistakenly believed that the corporation and not the individual was being served."  Doc. Nos. 21; 24.  Plaintiff obtained an entry of default against Mr. Oldham on September 6, 2007.  Doc. No. 14.  Defendant James Oldham has never filed any pleading responsive to the Complaint in this Court.

Plaintiff moved for default judgment on September 20, 2007.  Doc. No. 20.  Defendants moved to set aside the defaults against them the next day, on September 21, 2007.  Doc. No. 21.

### *Analysis*

Federal Rule of Civil Procedure 55(a) provides that if a party fails to plead or otherwise defend as provided by the rule, the clerk shall enter default upon the appropriate showing.  Fed. R. Civ. P. 55(a).  "[F]or good cause shown, the court may set aside an entry of default."  Fed. R. Civ. P. 55(c).

"Relief from a default entry has been granted when the default was due to a mistake by counsel as to the applicable procedural rules or the effect of pre-anser motions on the time within which to answer; the illness of counsel, the client, or an employee; a clerical mistake, confusion, or a misunderstanding by counsel; or defendant's failure to receive service."  10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2696 (1998).  Courts also analyze whether the default was excusable neglect or willful, whether setting it aside

---

[4]Defendant's name is actually James D. Oldham, thus the middle initial was incorrect.  However, Oldham conceded that he had received the waiver of service in June and personal service in August 2007.

would prejudice the adversary, and whether the defaulting party presents a meritorious defense before using its discretion to set aside the entry of a default. *Woodbury v. Sears, Roebuck & Co.*, 152 F.R.D. 229, 236 (M.D. Fla. 1993).  Relief may be denied when the party in default has been grossly negligent or has suffered a default as a result of a willful, intentional act.  WRIGHT, MILLER & KANE, § 2696.

> A.  *Defendants' Decision Not to Timely Respond Was Intentional and Willful*

In this case, Defendants did not move to set aside the defaults against them until September 21, 2007, or one day after Plaintiff moved for default judgment.  Defendants contend that "counsel and Defendant James Oldham were both under the mistaken understanding that the corporation, Oldham Group, Inc., was the only defendant in the actions.  They both mistakenly believed that by filing the Motion to Dismiss [Doc. No. 15] on behalf of the corporation, there would be no default." Doc. Nos. 21, 24.  Davis sent summons with a waiver of service to Oldham Group, Inc. and James Oldham on June 7, 2007.  *See* Doc. Nos. 30-7, 30-19.  Rather than return the waiver of summons acknowledging receipt of the summons, Oldham ignored it and decided that he would wait until he was personally served with process.  He contacted his own attorneys, who on July 20, 2007, instead of filing a responsive pleading in the Florida suit, filed claims against Davis (and his spouse)  in Tennessee federal court for claims arising from alleged breach of the very same stock purchase agreement.  *See* Doc. No. 21 at 4-8.

In this Florida case, Davis served Defendant Oldham Group, Inc. with the Complaint in this case on July 23, 2007 through resident agent Irene Kennedy (Doc. No. 7), which service was apparently directed to Noreen Wilson.[5]  Noreen Wilson, according to Oldham, was a consultant hired by E'Prime who helped Oldham Group, Inc. incorporate.  Defendants contend that "process was not

---

[5]Noreen Wilson was part of a 2005 negotiation to buy back E'Prime shares.

forwarded to James Oldham or any other officer, director, employee, or shareholder of Oldham

Group, Inc. and Oldham Group, Inc. was *not aware* of said service."  Doc. No. 21 ¶ 1.

Defendants may not have been aware of when service of process was accomplished; however,

it is undisputed that they were acutely aware that a lawsuit had been filed against them in Florida.

Mr. Oldham, under oath at the evidentiary hearing, conceded that he had received the Notice of

Lawsuit and Request for Waiver of Service of Summons sent to him by Davis's counsel on June 7,

2007.  Although Oldham concedes he knew in June 2007 that the lawsuit filed against him was

significant, he decided, instead of waiving service and defending the Florida lawsuit, that he would

engage an attorney to file suit arising out of the same stock purchase agreement in Tennessee federal

court.  Oldham conceded that he chose this course of conduct because preferred to have the suit

proceed in Tennessee.  He admitted during the hearing that by not waiving the service of process in

June 2007 and "electing" formal service by Davis, he was hoping to proceed with the suit in

Tennessee.  Oldham's counsel referred to this "first-served" service of process argument without

elaboration in his closing at the evidentiary hearing.

The Court finds in this case that the default was the result of gross neglect based on Oldham's

testimony.  Once James Oldham was personally served on August 14, 2007, he testified that he "was

traveling" and "just waited too long" to obtain counsel to defend the Florida suit.  Oldham's counsel,

Wayne Hartke, Esq., testified at the evidentiary hearing that he was not formally hired until September

1, 2007; however, his name appears as counsel on Oldham's behalf in the July 2007 filing in

Tennessee federal court, subject to approval of his appearance *pro hac vice* in the Tennessee court.

Doc. No. 22-2.  Mr. Hartke also testified that he had previously represented E'Prime in the past.

Defendants' conduct was intentional and showed a reckless disregard for the deadlines to respond to

the Florida complaint.  The Court also does not find that James Oldham is unsophisticated (having

agreed to a multi-million dollar stock purchase agreement)[6] or that there is a shortage of litigation attorneys in this District to represent him in a breach of contract case. Oldham certainly had no trouble finding an attorney and filing a lawsuit in Tennessee[7] within one month of receiving notice of the suit filed against him in Florida.

In *McKenzie v. Wakulla County*, the court denied a motion to vacate a default judgment where the defendant's conduct amounted to "gross neglect if not willful misconduct" when it failed to file an answer or respond to a motion for default; defendant also failed to respond to a motion for summary judgment for 70 days after it was due, and then only after a call from the court. 89 F.R.D. 444, 446 (N.D. Fla. 1981). As the court in *McKenzie* recognized, although "there is a strong public policy in favor of resolving lawsuits by a trial on the merits," when "the record shows a pattern of excessive delay with no excuses offered" and the "delay prejudices the Plaintiff," then default is warranted. *Id*.; *cf. Robinson v. Griffith*, 108 F.R.D. 152, 155 (D.C. La. 1985) (setting aside default against *pro se* party who had diligently sought aid of counsel but was unsuccessful; no gross neglect found considering he was a lay person who had been unable to obtain attorney's advice and had died within three weeks of default). Particularly as in this case, when Oldham himself is responsible for the delay in even obtaining counsel, the blame for the delay falls to him; it is a *pro se* defendant's "initial responsibility to either answer the complaint pro se or to retain counsel." *Fidelity and Deposit Co. of Maryland v. Jernagan,* 1987 WL 49657, *3 (N.D. Fla.1987) (holding *pro se* defendant's excuse

---

[6]Oldham's protestation that he misunderstood the requirements and import of the summons served upon him rings particularly hollow in light of his precise understanding of the requested waiver of service of process, his deliberate choice not to waive service (despite his asserted desire to get a speedy resolution of the dispute) and his engaging counsel to file separate litigation. It is plain that Oldham attempted to game the system but failed to observe all the rules.

[7]Oldham could have responded to the Florida federal suit and sought transfer to Tennessee pursuant to 28 U.S.C. § 1404. He opted not to do so.

was not within the special category of excusable neglect in which inaction is attributable to counsel and court is reluctant to attribute to the parties the errors of their attorneys).

In this case, Oldham Group, Inc., was not stirred to action to seek relief from the default until more than two weeks *after* the default against it was entered and not until after Plaintiff had filed his motion for final default judgment.  In fact, Defendants did not seek to have the defaults vacated until *after* Plaintiffs pointed out Defendants' procedural oversight in Plaintiff's response to the motion to dismiss.  *See* Doc. No. 18 at 2-3 (explaining proper procedure for setting aside default and pointing out that Oldham Group had not properly moved to set aside the default).

### B. Defendants Lack A Meritorious Defense

Defendants have failed to assert a meritorious defense sufficient to vacate the defaults.  A meritorious defense, in the context of a motion to vacate a default is demonstrated when the "allegations of defendant's answer, if established at trial, would constitute a complete defense to the action."  *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (refusing to vacate the default because defendant failed to allege any facts which, if established, would constitute a meritorious defense); *NuMed Rehabilitation, Inc. v. TNS Nursing Homes of Pennsylvania, Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999) (same).   "[T]he defendant must assert specific facts supporting the existence of a prima facie meritorious defense" as opposed to generally denying the allegations announced in the complaint.  *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *Lego Irrigational Intern. Inc. v. First Nat. Bank of Northbrook,* 108 F.R.D. 9, 11 (D.C. Ill. 1985) (general denials and conclusory statements are insufficient to establish a meritorious defense in order to vacate a default).

In this case, Defendant Oldham has not filed any responsive pleading; Defendant Oldham Group, Inc.'s only responsive pleading, a motion to dismiss, was denied by Judge Presnell in a one-

page order because the motion offered no relevant legal argument.  Doc. No. 19.  The only pleading to discuss a "meritorious defense" is Defendants' Motion to Vacate the Defaults (Doc. No. 21) which argues in one sentence that "as evidenced by the Complaint filed by the Defendant in Tennessee, Defendants have a defense of fraud in the inducement and a counterclaim for breach of contract and fraud in the case at bar."  Doc. No. 21 at 3.

However, as Plaintiff points out, although Defendants contend to have been defrauded by Plaintiff, they do not seek to rescind the Stock Purchase Agreement, but to keep the stock purchased under the Agreement, even though they have not paid the majority of the purchase price.  Plaintiff alleges that he was "defrauded" by information in public filings with the Securities and Exchange Commission which stated that the launch vehicles were "START Treaty Complaint."  Doc. No. 21 at 6 (from Tennessee complaint).  Defendants also alleged in the Tennessee case a breach of contract because Davis allegedly failed to deliver the trade secrets/intellectual property rights as represented. Neither claim is a meritorious defense, particularly since Oldham admitted that he had been involved with the company – an insider of E'Prime – for ten years before purchasing the E'Prime stock and was familiar with E'Prime's assets.

### C. Prejudice to Plaintiff is Significant

Plaintiff contends that he is significantly prejudiced if the default were to be vacated.  Some courts have found that the threat of prejudice is much greater when no factual basis for a meritorious defense exists. *See, e.g., In re Tires and Terms of Columbus, Inc.*, 262 B.R. 885, 889 (Bkrtcy. M.D. Ga. 2000) (citing cases and holding that, where defendant had not presented a meritorious defense, the threat of prejudice to plaintiff was enhanced).  The rationale is that the delay in vindicating the plaintiff's rights and the expense in prosecuting a case where the defendant has defaulted and has no meritorious defense amount to undue prejudice to the plaintiff. *See id.*

-10-

In this case, under the Stock Agreement at issue, Defendants' default in the acquisition of the shares from Plaintiff means that all voting rights and ownership of the shares of transferred stock reverts back to Davis. *See* Doc. No. 1-4, Stock Pledge Agreement.   During cross-examination, Oldham conceded  that he had defaulted on the payments to Davis, that he had appointed new persons to the Board of Directors of E'Prime, and that he had declared a reverse stock split of E'Prime shares. Because E'Prime is an ongoing public company, there is great prejudice in having Oldham continue to operate E'Prime when ownership has actually reverted to Plaintiff.  As Plaintiff argues, the injury to Davis is "compounding daily."

### D.  Requiring a Response to Motion for Default Judgment

Also pending is Plaintiff's Motion for Default Judgment (Doc. No. 20).  Because the Court has denied the Motion to Vacate the Clerk's Entry of Default, default judgment may be appropriate in this case.  Under Federal Rule of Civil Procedure 55(b), if a default judgment is sought for a sum certain or for a "sum which can by computation be made certain," the clerk, "upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear."  FED. R. CIV. P. 55(b).  Here, Plaintiff's Complaint seeks damages for breach of the stock purchase agreement and enforcement of the promissory note at issue for a sum certain which can be determined by reference to the exhibits attached to the Complaint. Doc. Nos. 1; 1-3; 1-5.

Plaintiff seeks $4,384,710.46 plus taxable costs of $550, exclusive of post-judgment interest. Doc. Nos. 20 (motion); 17 (affidavit in support).  Under the plain language of Rule 55(b)(1), no further hearing is necessary because Plaintiff seeks a sum certain.  However, in light of the foregoing, Defendants are **ORDERED** to file a response to Plaintiff's Motion for Default Judgment by November 30, 2007.

**DONE** and **ORDERED** in Orlando, Florida on November 16, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record