UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

BOB DAVIS AND BETTY DAVIS, )
                                             )
      Plaintiffs,                )
                                           )
v.                                       )  6:07-cv-941-orl-31DAB
                                           )
OLDHAM GROUP, INC.          )
and James Doug Oldham,     )
                                           )
     Defendants.               )

Motion for Reconsideration and Opposition to Plaintiff's Motion for Final Judgment

     COMES NOW defendants Oldham Group, Inc. and James D. Oldham (referred to herein as "Doug Oldham"), by counsel, moving for reconsideration of the Court's prior ruling and Opposition to the Motion for Final Judgment and damages, based on additional evidence as contained in the affidavit of the defendant, and stating as follows:

     1. Defendants incorporate the affidavit of defendant Doug Oldham, attached hereto by reference.

     2. At the time of the hearing, defendants and counsel were informed that there was only 1 hour allocated for the hearing. All of the information contained in the attached affidavit and incorporated documents were not previously presented to the Court. It was assumed that since it appeared that there was a failure of consideration, based on the misrepresentations by the plaintiffs that there would be no need to go into the further details of the case.

     3. It has not been previously presented to counsel that the stock was never delivered to the defendant, as was required pursuant to the terms of the Stock Purchase Agreement. That is to say that there was NO consideration paid by plaintiffs, yet

1

plaintiffs received an initial payment of $500,000 even two weeks before the contractual agreement.

Thus, plaintiffs have not only been unjustly enriched, they are plain thieves. They have stolen money from the defendant, and they have not given any consideration to the defendants of the stock promised, nor any other compensation of any kind. In fact, they have obligated defendants to more debt.

Plaintiffs lied to get a Stock Purchase Agreement, stating that the company whose stock was being purchased was "out of the START Treaty" and therefore able to launch satellites which would be sold at profit, but also that the plaintiffs owned Trade Secrets, and other proprietary assets which did not exist.

`However, the most important issue which was NOT presented to the Court was the fact that the shares of stock purchased pursuant to the Stock Purchase Agreement were never delivered to the defendants. Zero.

 Zero. Defendants paid about $1 Million Dollars and received NOTHING for that money. Now plaintiffs demand even more money, plus other costs and attorney's fees, which is an abomination of justice. This will not stand, and certainly will not stand on appeal.

4. Where is the stock that was to be delivered "at closing" as stated in the Stock Purchase Agreement?" Certainly the defendants do NOT have it. The stock was never delivered as agreed, nor were the shares released to pay the bills to keep the company open as stated in the agreement, as aforesaid. The attached affidavit of defendant Doug Oldham recites the circumstances, and the attached documents confirm that all of the entire company's business would close unless the terms of the agreement, including

payment of bills such as utilities, were paid with emails confirming that the company was in great financial distress. Instead, plaintiff refused to deliver the stock, and refused to release of the shares of stock to solve the company's problems. Please review the content of the affidavit of Doug Oldham, which is incorporated herein by reference, including all of the documents to which he refers.

5. The previous hearing was understood to be an issue of the Service of Process. It was counsels' understanding that service of process was a Due Process issue; that is, that no person is required to respond to any legal complaint unless and until that person or entity was <u>properly served</u> with papers. That never occurred until the timely filed response of the Special appearance Motion to Dismiss, which is a legally proper filing.

The Court's questioning about <u>unfiled</u> attempts to serve process has no basis in law. Perhaps the Court dislikes the fact that a defendant does not respond to attempts to serve process on a "gated" community, despite the absolute and undisputed fact that defendants did not have a "gated" community, makes no difference to the trial Court. Perhaps the trial Court does not care that the defendant paid $1 Million to the plaintiffs and received NOTHING in return.

Incidentally, the evidentiary record reflects the fact that when "service of process" was attempted on a business or person at the wrong address (as admitted at the hearing) the defendant has no "gates" or cages of any kind that prevent access to him. Doug is a simple man, and as now may be obvious to everyone, perhaps a naïve businessman who agreed to advance $1,000,000 to thieves (plaintiffs in this case), and to receive nothing in return.

3

These decisions are abhorrent to Justice. Based on the attached affidavit of Doug Oldham, and the supporting documents, there is no final decision possible except that, at the very minimum, there should be a trial on the merits.

I am sure that with a trial on the merits, that the defendants will prevail, but that the plaintiffs will face very significant other legal liability.

6. The affidavit of Doug Oldham is incorporated by reference.

7. Defendants oppose any issuance of a judgment in this case against them, and since there has been a wholly and complete failure of consideration, any such judgment would be completely without merit.

8. Any adverse judgment will be certainly appealed, and with good grounds, particularly on the additional evidence not previously presented due to the 1 hour time hearing time set for this case. This is a multimillion dollar case that deserves more that 1 hour for hearing, which was certainly not enough time to hear this case.

9. Defendants are prepared to present all of the emails and exchanges between and among the parties. Moreover, the only attorney who prepared and closed the transaction was Mr. Stadler, Esq., who was supposed to transfer the stock to the Purchaser, defendants, and which he did not do. Defendants got ZERO. The attorney closing the transaction protected his client, Bob Davis, and made sure that NONE of the stock was transferred to defendants as the Agreements required. Doug Oldham got zero, plaintiff got $500,000 at closing. That stinks, personally and legally.

For Mr. Stadler, Esq,, it is a clear conflict of interest, and he surely knows it. Consequences may follow.

10. There can be no money damages against the defendants when they never received one single cent from the plaintiffs, nor did they ever receive the benefit of the bargain, to wit: the stock.  Worse, the repeated failure of the plaintiffs to respond to many, insistent demands for the ability to save the company in light of the increasing financial demands for payments, left unresponded to by Bob Davis as evidenced by the emails incorporated herein, clearly shows that the $500,000 initial payment by Doug Oldham to Bob Davis was certainly used to buy Bob Davis a new house, or surely other personal benefits for him or his wife.  It surely was not used for the benefit of the company or its shareholders.

11. There is merely a first issue of failure of consideration:  Bob Davis never delivered the stock to defendant, as agreed pursuant to the Stock Purchase Agreement. Therefore, there are no financial damages to the plaintiff, and certainly no legal fees owed when the attorney involved represented only the plaintiff and not the defendant, and is subject to a major malpractice claim,

Secondly, there were 2 other major misrepresentations in the Stock Purchase Agreement, to wit:  that the vehicles were "out of the START Treaty" and that plaintiff had Trade Secrets and proprietary rights which undisputed testimony established that does not exist, even though the defendant was persuaded to purchase the shares based on such representations.  That is, defendant paid $500,000 as an initial purchase of shares, based in part on the sale of "Trade Secrets" which did not exist - and was <u>uncontested</u> at the hearing that they did not exist - that is, a major promise for the payment of money from the plaintiff, Bob Davis, was an absolute lie.

So the Court now asks how much for fees and attorney costs should be assessed against the person who has paid $1 Million dollars to a person who does not deliver the stock and who lies about owning Trade Secrets that he does not own, lies about the launch vehicle being out of the START Treaty so there is no business value to the asset, and now seeks to get "damages" from owning nothing and being a profligate fraud, and stealing money from other shareholders for his personal profit.

12.  Any determination of an award of any costs, fees, or other assessments in this case must await further review, defendants incorporating all arguments and incorporated documents, plus what is requested to be a reconsideration of this case, which is appropriate and requested.

Wherefore, defendants request reconsideration and other relief as above.

## Certificate of Service

I herby certify that a copy of the foregoing was served by first class U.S Mail on this 30th day of November, 2007 to Mr. David A. Gunter, Esq., 8240 Devereaux Dr., Suite 8240 Viera Fl. 32940.

                                                /s/ Wayne Hartke
                                                Wayne Hartke