**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BOBBY G. DAVIS,**

            **Plaintiff,**

**-vs-**                                        **Case No. 6:07-cv-941-Orl-31DAB**

**JAMES D. OLDHAM, III, and OLDHAM**
**GROUP, INC.,**

            **Defendants.**

_____

## ORDER AND REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **MOTION FOR RECONSIDERATION (Doc. No. 37)**
>
> **FILED:**     **November 30, 2007**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED on the merits** as to the Oldham Group, Inc. and **DENIED without prejudice** as to James D. Oldham III, which may be reasserted following the lifting of the automatic stay.

The parties have sued each other in two different federal courts for claims arising from breach of a stock purchase agreement between Bobby Davis and Oldham Group, Inc. for purchase the stock of E'Prime Aerospace Corporation, under which agreement James D. Oldham III made certain guaranties. On November 16, 2007, the Court entered an Order denying Defendants' Motion to set aside the clerk's entry of defaults against them and ordering them to file a response to Davis's Motion for Final Default Judgment. Doc. No. 36. Since that time, Defendant James D. Oldham III filed a

Suggestion of Bankruptcy on January 14, 2008.  Doc. No. 44.  Judge Presnell stayed the case as to Defendant James D. Oldham III on January 15, 2008.  Doc. No. 45.  Although counsel for Defendants Wayne Hartke represents that "it was anticipated that the corporate defendant would [also] be filing a Petition for Bankruptcy at the same time as the individual defendant," for reasons unknown to Mr. Hartke, such filing "has not happened yet."  Doc. No. 46.  Thus, the Court considers the Motion for Reconsideration (of the Order denying the Motion to Vacate Defaults) on the merits only as it relates to Oldham Group, Inc.

## Analysis

The facts leading up to the clerk's entry of default against Oldham Group, Inc. are set forth in detail in the Court's prior Order.  Doc. No. 36.  To summarize, Davis filed suit against Defendants James D. Oldham and the Oldham Group, Inc. on June 4, 2007.  Doc. No. 1.  Mr. Oldham failed to return the waiver of service Davis sent to him in this Florida federal case and instead quickly filed his own lawsuit arising from the same stock purchase agreement in Tennessee federal court.

Because the waiver of service was not returned, Davis subsequently served Oldham Group, Inc. through a registered agent and Mr. Oldham through personal service.  However, neither Oldham Group, Inc. nor Mr. Oldham timely answered and, on Davis's motions, default was entered by the Clerk against both Defendants.  Doc. Nos. 9, 14.  Davis then moved to enter final default judgments against both Defendants on September 20, 2007.  Doc. No. 20.  The next day, on September 21, 2007, James Oldham and the Oldham Group moved to vacate the entries of default (Doc. No. 21) and Davis responded (Doc. No. 26).  Following an evidentiary hearing on the Motion to Vacate Defaults, the Court denied Defendants' Motion to set aside the clerk's entry of defaults against them and ordered them to file a response to Davis's Motion for Final Default Judgment on November 16, 2007.  Doc.

No. 36. Defendant James D. Oldham III subsequently filed a Suggestion of Bankruptcy and the claims against him (only) were stayed. Doc. No. 44, 45.

Instead of filing the court-ordered response to the amounts sought in Davis's Motion for Final Default Judgment, Oldham Group filed a Motion for Reconsideration and a putative "Opposition" to the Motion for Default Judgment. Reconsideration of an order under Rule 59(e) "is an extraordinary remedy to be employed sparingly." See *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla.1994). "The function of a motion to alter or amend a judgment is not to serve as a vehicle to re-litigate old matters or present the case under a new legal theory . . . [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (internal quotations omitted). Pursuant to Rule 59(e), courts have generally granted relief to (1) account for an intervening change in controlling law, (2) consider newly available evidence, or (3) correct clear error or prevent manifest injustice. *Sussman*, 153 F.R.D. 689, 694.

Oldham Group appears to present nothing more than a disagreement with the findings of the Court. Oldham Group does not cite to any matter not already considered by the Court, points to no intervening change in the law, and has not shown clear error. Moreover, the Court notes that the motion seeks relief based on a misapprehension of the length or issues to be covered at what was clearly noticed as "an *evidentiary hearing* and oral argument[1] on Defendants' Motion to Vacate Defaults and Plaintiff's Response." Doc. No. 28. Default had already been granted against Oldham

---

[1] Oldham Group claims it limited its presentation because counsel was told there "was only one hour allocated for the hearing" (Doc. No. 37 at 1); however, no such limit was set forth in the notice. Moreover, any such issue over a purported one-hour time limit is irrelevant, since Oldham Group was not limited in its presentation of the issues in dispute in the underlying contract.

Group (Doc. No. 9), so it was Oldham Group's burden to adequately present evidence and argument in support of vacating the default that had already been entered. For Oldham Group's counsel to now argue, "It has not been previously presented to counsel that the stock was never delivered to the defendant, as was required pursuant to the terms of the Stock Purchase Agreement," (Doc. No. 37 at 1), further underscores the lack of merit of the presentation made on the Motion to Vacate Defaults. The Motion for Reconsideration is **DENIED on the merits** as to the Oldham Group, Inc. and **DENIED without prejudice** as to James D. Oldham III, which may be reasserted following the lifting of the automatic stay.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT (Doc. No. 20)**
>
> **FILED:**   September 20, 2007
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** as to Oldham Group, Inc. and be **DENIED without prejudice** as to James D. Oldham III, which may be reasserted following the lifting of the automatic stay.

Davis obtained a default against Oldham Group, Inc. on August 20, 2007. Doc. No. 9. Not until sixteen days after entry of the Clerk's default against it and nearly one month after its answer was due, did Oldham Group file an untimely Motion to Dismiss, on September 5, 2007. Doc. No. 15. Judge Presnell subsequently denied the Motion to Dismiss on September 19, 2007 in a one-page order because the motion offered no relevant legal argument. Doc. No. 19. To date, Defendant

Oldham Group has failed to file an answer to Davis's Complaint. Instead, Oldham Group filed its unsuccessful Motion to Vacate Entry of Default. Despite being granted the opportunity to respond to the Motion for Default Judgment as to the calculation of the amounts due Davis, Oldham Group instead filed a six-page Motion for Reconsideration and "Opposition" to Davis's Motion for Final Judgment that cites not a single case or calculation, but basically argues that "Plaintiffs [sic] are plain thieves." Doc. 37.

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure 55(b)(2); *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003). The Court has already determined that Oldham Group, Inc. was properly served with a summons and copy of Davis's Complaint and failed to timely response, thus, default was properly entered against the corporation and vacation of the default is not warranted. Doc. No. 36. The Court finds that Oldham Group's failure to timely respond to the Complaint and subsequent entry of default against it served to admit the well pleaded allegations of Davis's Complaint, including that Oldham Group, Inc. owes Davis more than $4 million. *See, e.g.*, *Buchanan v. Bowman,* 820 F.2d 359 (11th Cir. 1987) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact.").

**Facts Related to the Motion for Default Judgment**

Because default has been properly entered against Oldham Group, it is deemed to have admitted the allegations made in Davis's Complaint. *See* Doc. No. 1. On July 25, 2006, Davis and Oldham Group entered into a Stock Purchase Agreement ("Purchase Agreement") pursuant to which Davis agreed to sell 386.8 million shares of stock in E'Prime Aerospace Corporation to Oldham Group for a total purchase price of $3 million. Doc. Nos. 1 ¶ 5; 1-3. Davis received the initial

payment of $500,000 due under the Purchase Agreement on July 31, 2006.  Doc. No. 1 ¶ 6.  On August 21, 2006, Davis and Oldham Group entered into a Stock Pledge Agreement and Oldham Group executed a Promissory Note in favor of Davis for $2 million. Doc. Nos. 1 ¶ 7; 1-4, 1-5.  A default under the Purchase Agreement or the Promissory Note also constituted an event of default under the Stock Pledge Agreement.  Doc. No. 1 ¶ 8, 10.  Under the terms of the Stock Purchase and Pledge Agreements, Oldham Group was required to pay an additional $500,000 to Davis by April 25, 2007, which he failed to do.  Doc. No. 1 ¶ 12-13.  In addition, Oldham Group was also in default by failing "at closing to [have E'Prime] sign a three-year consulting contract with Davis for $280,000 annually" or provide Davis with a rent-free office for three years, pursuant to the Stock Purchase Agreement.  Doc. No. 1 ¶ 14-16.  Davis is entitled to the amount due on the Promissory Note and under the Stock Purchase Agreement, and the right to have the pledged stock registered in his name, which shall be sold at public or private sale, at Davis's option.  Doc. No. 1.

**Amount to be Awarded**

Under Federal Rule of Civil Procedure 55(b), if a default judgment is sought for a sum certain or for a "sum which can by computation be made certain," the clerk, "upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear." FED. R. CIV. P. 55(b).  Here, Davis's Complaint seeks damages for breach of the stock purchase agreement and enforcement of the promissory note at issue for a sum certain which can be determined by reference to the exhibits attached to the Complaint.  Doc. Nos. 1; 1-3; 1-5.

Under the plain language of Rule 55(b)(1), no further hearing is necessary because Davis seeks a sum certain. As the Court made abundantly clear in its November 16, 2008 Order, the only issue

remaining is the amount of the computation of damages to which Davis is entitled. Doc. No. 36. Despite this fact, Oldham Group chose to belatedly argue (not while Defendant Oldham was on the stand under oath at the Evidentiary Hearing, but by a deficient affidavit[2] filed two weeks later) that the stock was never delivered[3] and Oldham Group was misled about whether the vehicles were "out of the START Treaty." Doc. No. 40.

On November 20, 2007, Davis sought $4,384,710.46[4] plus taxable costs of $550, exclusive of post-judgment interest. Doc. Nos. 20 (motion); 17 (affidavit in support). In its purported "Opposition," Oldham Group has failed to challenge any particular amount alleged by Davis, but argues only "[a]ny determination of an award of any costs, fees, or other assessments in this case must await further review." Doc. No. 37. Oldham Group is no longer in a position to defend its liability in the case; that is foreclosed by its failure to timely defend in the case through James Oldham's gross neglect, evidenced by his testimony. Doc. No. 36 at 7.

**Entering Separate Judgment**

Davis originally moved for default judgments against both Defendants, but James Oldham III has since filed for bankruptcy. Federal Rule of Civil Procedure 54(b), which governs separate judgments upon multiple claims, provides as follows:

> When an action presents more than one claim for relief– whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all,

---

[2] The "affidavit" is unsigned and unnotarized and not stated as being made under penalties of perjury; none of the referenced exhibits are on file in the record. Doc. No. 37-2.

[3] As Davis points out, pursuant to the terms of the stock sale, the stock was not to be delivered until he received payment in full, which did not occur because Oldham Group breached the Stock Purchase Agreement.

[4] This amount is most likely understated, with the passage of three more months; thus, Davis may file an amended affidavit with the updated amount during the ten-day objection period.

> claims or parties only if the court expressly determines that there is no just reason for delay.

FED. R. CIV. P. 54(b). Otherwise, an adjudication of fewer than all the claims or the rights and liabilities of all the parties is not an appealable final decision. *In re Southeast Banking Corp.,* 69 F.3d 1539, 1547 (11th Cir. 1995) (purpose of Rule 54(b) is to prohibit piecemeal appeals).

A district court considering a similar motion for entry of final judgment in *Canadyne-Georgia Corp. v. Bank of America*, No. 5:96-CV 114-1DF, 2001 WL 1571002, *1-2 (M.D. Ga. Dec. 5, 2001) discussed the criteria for entering separate judgments:

> The Supreme Court has outlined a two-prong analysis for determining whether a judgment should be certified under Rule 54(b). First, the district court must determine whether the judgment is final. Second, the district court must determine whether there is any just reason to delay entry of an individual final judgment. Although a decision to certify a judgment under Rule 54(b) is committed to the sound discretion of the district court, the Eleventh Circuit has indicated that this discretion should be exercised conservatively: "Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" As to the first prong, the Supreme Court has explained that the judgment at issue "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' . . . As to the second prong, the Eleventh Circuit has directed district courts to balance the judicial administrative interests and relevant equitable concerns. . . . According to the Eleventh Circuit, consideration of the relevant equitable concerns "serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay."

*Id.* (citations omitted).

As the Court pointed out previously (Doc. No. 36) and remains undisputed by Oldham Group, under the Stock Agreement at issue, Oldham Group's default in the acquisition of the shares from Plaintiff means that all voting rights and ownership of the shares of transferred stock reverts back to

-8-

Davis. *See* Doc. No. 1-4, Stock Pledge Agreement. During cross-examination at the Evidentiary Hearing, Oldham conceded that he had defaulted on the payments to Davis, that he had appointed new persons to the Board of Directors of E'Prime, and that he had declared a reverse stock split of E'Prime shares. Because E'Prime is an ongoing public company, there is great prejudice in either having Oldham continue to operate E'Prime when ownership has actually reverted to Plaintiff or in delaying the appeal of the matter while James Oldham's personal bankruptcy progresses. As Davis argued at the Evidentiary Hearing, the injury to him is "compounding daily."

Moreover, Oldham Group's Motion for Reconsideration makes repeated references to Oldham Group's desire to appeal. Doc. No. 37. The Court cannot enter final judgment against James Oldham, nor can he immediately appeal the decision, while his case is stayed until his personal bankruptcy case is concluded. There is also no guaranty that James Oldham will have the wherewithal or ability to appeal at the conclusion of the bankruptcy. Thus, there is "no just reason to delay entry" of a partial final default judgment on Davis's claims against Oldham Group, Inc. and would in this case "alleviate some danger of hardship or injustice associated with delay." *See, e.g., Pereira v. Cogan*, 275 B.R. 472, 474 (S.D. N.Y. 2002) (entering a final partial judgment where debtor was insolvent and the trustee had established his right to collect as well as an interest in a prompt enforceable judgment), *aff'd*, 52 Fed. Appx. 536, 539, 2002 WL 31664489, *3 (2d Cir. 2002).

Therefore, it is respectfully **RECOMMENDED** that a **separate final default judgment** pursuant to Rule 54(b) be entered in favor of Plaintiff Bobby G. Davis against Defendant Oldham Group, Inc. in the amount of $4,385,260.46.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** in Orlando, Florida on January 30, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record